UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TAMMY HODGES                                                                                              PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:07-CV-345-S

AMERICAN HERITAGE LIFE
INSURANCE COMPANY                                                                                     DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on motion of the plaintiff, Tammy Hodges ("Hodges") for judgment on the administrative record (DN 14), and cross motion of the defendant, American Heritage Life Insurance Company ("AHL") for judgment upholding denial of benefits (DN 15). Hodges has brought this action seeking judicial review of AHL's decision to deny her claim for disability benefits. For the reasons that follow, the court will deny Hodges' motion and grant AHL's motion.

### I. BACKGROUND

Hodges has been employed by Wilson Brothers, Inc. ("Wilson Brothers"), an automotive dealer in Bardstown, Kentucky, since December 1990. In April 2005, Hodges enrolled in a plan for voluntary group disability and life insurance offered through Wilson Brothers (the "Plan"). The Plan is insured and administered by AHL and provides short and long-term disability benefits in the event an employee becomes disabled. Under the Plan, an employee is disabled when, among other requirements, "he is unable to perform the material and substantial duties of his regular occupation due to his sickness or injury."

On June 9, 2005, Hodges was diagnosed by her family physician, Dr. Lida Oxnard, as having fibromyalgia and Epstein Barr virus. The next day, Hodges informed Dr. Oxnard that she had decided to go on disability. Hodges applied for, and received, short-term disability benefits for the period from

June 10, 2005 through July 15, 2005, while her claim was submitted to independent peer physician review. On her claim form, Hodges listed the inability to sit at a computer, the inability to cope with stress, the need for rest, and the taking of medication as reasons for her inability to work. Attached to the claim form was a form completed by Dr. Oxnard which stated that Hodges' work restrictions included "rest, no stress, nothing repeatative (sic), taking a lot of medications."

Hodges' claim form, Dr. Oxnard's medical records, and a short hand written note provided by Wilson Brothers describing Hodges' job as "F&I Mgr./Business Mgr." which consists of "talking to customers, title clerk, quoting pmts, etc.," were submitted for independent peer physician review conducted by Dr. Herbert Kleinman, a board certified physician in internal medicine. Dr. Kleinman reviewed the submitted information and discussed Hodges' case with Dr. Oxnard. On July 27, 2005, Dr. Kleinman reported that there was insufficient objective evidence to establish that Hodges was disabled. Dr. Kleinman noted that Hodges' diagnosis was based on subjective complaints and that her musculoskeletal physical exam did not support a finding of disability. After reviewing Dr. Kleinman's report, AHL denied Hodges disability benefits after July 15, 2005.

Hodges appealed AHL's denial of continued disability benefits and provided AHL with a statement of work restrictions from Dr. Louie Williams, stating that she should avoid constant repetitive use of her hands, wrists, elbows, shoulders, neck, back, and knees. AHL submitted Dr. Williams' statement of work restrictions, as well as Hodges' claim forms, medical records, and Dr. Kleinman's report, for a second independent peer physician review conducted by Dr. Joseph Pachman, a board certified physician in preventative medicine/public health. On October 4, 2005, after reviewing the submitted information and discussing Hodges' case with Dr. Williams, Dr. Pachman concluded that Hodges had no restrictions or limitations that would preclude her from performing her essential job duties. Dr. Pachman stated that Hodges' job was sedentary and that there was insufficient objective data

to indicate that she was unable to perform those duties as a result of musculoskeletal impairment. Based on Dr. Pachman's report, AHL upheld its denial of disability benefits.

Hodges brought a second appeal, contending that her position at Wilson Brothers was not sedentary. Wilson Brothers provided AHL with a more detailed description of Hodges' position of "Finance Department Manager," and described Hodges' duties as interacting with every potential customer; quoting payment ranges, assisting the sales department with "the closing process;" writing loans for customers; selling financial products such as life and disability insurance, gap protection and extended warranties; escorting customers back to the sales floor when finished; preparing title work, transferring vehicle ownership and preparing payoff checks; preparing all "sold deals" for the dealership's accounting department; making copies of documents; and inputting information into the computer. The description noted that Wilson Brothers typically sells fifty to eighty vehicles per month and that the finance department is involved on every deal regardless of whether the vehicle is financed. Hodges also provided AHL with an updated work restriction statement from Dr. Williams which stated that Hodges was not to sit for more than thirty minutes at a time and that she was to alternate sitting with standing. In addition, Hodges was restricted from lifting any items or making repetitive motions with her back or arms.

Upon receiving this information, AHL submitted both job descriptions, as well as a statement from Hodges' insurance agent briefly describing Hodges' job, to Robert Violetta, an independent rehabilitation counselor and consultant, and requested that he classify the job. Violetta concluded that Hodges' position did not correspond to any description in the United States' Department of Labor Dictionary of Occupational Titles. Violetta classified the job as "light duty"[1] rather than "sedentary"[2]

---

[1] The Dictionary of Occupational Titles defines "light duty" work as: Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly ("constantly" means activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess (continued...)

based in part on his own observations of auto dealerships suggested that the job required Hodges' to walk or stand to a significant degree.

Upon receiving Violetta's occupational analysis, AHL forwarded Hodges' entire file for a third independent peer physician review conducted by Dr. Richard Fraser, a board certified physician in internal medicine/geriatric medicine. In a report issued December 7, 2005, Dr. Fraser concluded that the medical documentation did not substantiate any condition resulting in restrictions or limitations that would preclude Hodges from performing the material and substantial duties of her jobs. Dr. Fraser stated that her physical findings were within the normal limits with the only abnormalities being Hodges' subjective complaints. Dr. Fraser also disagreed with Violetta's classification of Hodges' position as light duty. Rather, Dr. Fraser specifically noted in his report that "the job is not light duty in nature but rather sedentary." Based on Dr. Fraser's report, AHL concluded that Hodges was not disabled whether her job was classified as "sedentary" or "light duty," and again upheld its denial of disability benefits.

In January 2006, Hodges submitted a revised claim form adding synovitis and osteoarthritis of the left knee to her initial conditions of fibromyalgia and Epstein Barr virus. Included with the form was letters from Dr. Oxnard and Dr. Williams stating that Hodges had been receiving care for fibromyalgia/myofascial pain syndrome, had been diagnosed by Dr. David Neudstadt with synovitis and

---

[1](...continued)
of those for sedentary work. Even though the weight lifted may be only a negligible amount, a job should be rated light duty work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

[2] The Dictionary of Occupational Titles defines "sedentary" work as follows: Exerting up to 10 pounds of force occasionally ("occasionally" means activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently ("frequently" means activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

osteoarthritis, and had been unable to perform her job duties. On March 3, 2006, AHL denied Hodges' claim on the basis that she had not provided appropriate supporting medical documentation for the new conditions. Hodges then forwarded letters from Dr. Williams and Dr. Oxnard concerning her medical conditions and her ability to work. Dr. Williams stated in his letter that he disagreed with Dr. Fraser's finding that there was a lack of evidence for a diagnosis of fibromyalgia. Dr. Williams stated that Dr. Neustadt had also diagnosed Hodges with fibromyalgia and that "fibromyalgia is not associated with very many objective findings." Dr. Oxnard stated that Hodges' limits and restrictions include "no bending, no sitting or standing for long periods of time, and no repetitive movements."

Upon receipt of Dr. Williams' and Oxnard's letters, AHL submitted Hodges' file for a fourth independent peer physician review to Dr. Robert Friedman, a board certified physician in anesthesiology, pain medicine, internal medicine, and rheumatology. After reviewing Hodges' file and discussing her case with Dr. Williams and Dr. Neustadt, Dr. Friedman issued a report on June 28, 2006, which stated that "the determination of impairment with fibromyalgia is problematic because of the subjective nature of symptoms." Dr. Friedman noted that both he and Dr. Williams suggested that additional testing, such as a functional capacity evaluation, would be useful to determine the reliability of her complaints. Dr. Friedman also noted that both Dr. Williams and Dr. Neustadt agreed that, based on the evidence in Hodges' record, it was impossible to make a determination of limitations or restrictions.

Following the recommendation of Dr. Friedman and Dr. Williams, AHL referred Hodges to HealthSouth for an independent functional capacity evaluation. In a report issued September 6, 2006, Angela Clark Miller, occupational therapist and rehabilitation specialist, and Sue Kissel, physical therapist, concluded that Hodges was able to perform sedentary work, but complained of pain when carrying out tasks that were considered light duty.

AHL submitted the results of Hodges' functional capacity evaluation, Hodges' job descriptions, and Violetta's occupational analysis of Hodges' position for an independent vocational review conducted by Seacoast Rehabilitation's vocational consultant Charles Galarraga. After reviewing the information, Galarraga concluded that the Department of Labor's Revised 4th Edition of the Dictionary of Occupational Titles contained a job description of "Contract Clerk, Automobile" that matched the essential duties listed in the more detailed job description provided by Wilson Brothers, and that such position was "sedentary." Galarraga noted, however, that it would be important to determine how the Contract Clerk, Automobile position is performed in the national economy, what the job is called, as well as the amount of time the employee is actually on his or her feet in an eight hour workday. Galarraga, therefore, suggested that a labor market survey be conducted to answer these questions.

At AHL's request, Galarraga conducted a survey of the local labor market within a fifty mile radius of Bardstown, Kentucky to learn more about this type of position. On October 16, 2006, Galarraga provided AHL with the results of his survey of ten automotive dealerships within 27 to 36 miles of Bardstown. Galarraga learned that automotive dealerships commonly referred to this type of position as "Business Manger" or "Finance Manger." All of the dealerships reported that the job involved being on one's feet approximately two and one half hours in an eight hour workday. On October 16, 2006, Galarraga determined that the survey evidence supported the conclusion that the job was "sedentary" with the option of adjusting one's position, and sitting and standing, as needed.

On November 9, 2006, after re-evaluating Hodges' previously submitted information and independent peer physician reports, and considering the additional new information, including medical records from Dr. Neustadt, the functional capacity evaluation, and Galarraga's vocational analysis and labor market survey, AHL concluded that Hodges was not disabled as defined by the Plan. AHL upheld its denial of disability benefits and informed Hodges of her right to bring suit under ERISA. Thereafter,

Hodges filed this action seeking judicial review of AHL's denial of her claim for continued disability benefits under 29 U.S.C. § 1132(a)(1)(B).

## II. STANDARD OF REVIEW

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Kalish v. Liberty Mut./Liberty Life Asssurance Co. of Boston*, 419 F.3d 501, 506 (6th Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). "When such authority is granted, the highly deferential arbitrary and capricious standard of review is appropriate." *Id.* (quoting *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir.1998)). Both parties in this action agree that the Plan expressly grants AHL discretionary authority to make all decisions regarding eligibility and entitlement to benefits, and therefore, the arbitrary and capricious standard applies to the court's review of Hodges' claim.

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Courts must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (internal citations and quotations omitted). Although the arbitrary and capricious standard of review is highly deferential, "it is not, however, without some teeth." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). Deferential review does not mean no review, and deference need not be abject. *Id.* In applying the arbitrary and capricious standard courts must take into account any conflicts of interest held by the administrator, *see Borda*, 138 F.3d at 1069, and must

review the quality and quantity of the medical evidence and opinions on both sides of the issue. *See McDonald,* 347 F.3d at 172.

### III. ANALYSIS

Hodges contends that AHL's decision that she is not disabled under the terms of the Plan and that she is able to perform the material and substantial duties of her regular occupation was arbitrary and capricious because AHL: (1) failed to consider the effects of the medications prescribed to her on her ability to perform her job duties; (2) improperly relied on the opinions of their reviewing physicians concerning her subjective complaints; and (3) failed to consider all of the restrictions reported by her treating physicians.

**A. Hodges' Medications**

The court is unpersuaded that AHL's lack of consideration of the effects of the medications prescribed to Hodges on her ability to perform her job duties renders AHL's decision to deny her disability benefits arbitrary and capricious. In support of her argument, Hodges relies on *Smith v. Continental Casualty Co.*, 450 F.3d 253 (6th Cir. 2006) and *Adams v. Prudential Ins. Co. of America*, 280 F.Supp.2d 731 (N.D.Ohio 2003). In *Smith* and *Adams*, the courts did find that the plan administrators' disability determinations were arbitrary and capricious because the administrators failed to consider the effects of medications that the claimants were taking in order to control their symptoms on their ability to perform their job duties. *Smith*, 450 F.3d at 264; *Adams*, 289 F.Supp.2d at 741. However, the factual circumstances in both *Smith* and *Adams* greatly differ from the factual circumstances before this court.

In *Smith*, after receiving the plan administrator's final denial letter, Smith contacted the administrator and specifically asked the administrator to consider the effects of the medication that she was required to take. *Smith*, 450 F.3d at 264. In support of her argument, Smith's personal physician

drafted a letter which stated "in my medical opinion, it would be very difficult to function under any circumstance while under the influence of [Smith's] medications." *Id.* The administrator failed to forward this letter to the physician performing the review of Smith's file and simply informed Smith that "this information does not warrant a change in our decision." *Id.* at 264-65. The reviewing physician did not address Smith's medication except to list some of those which had been prescribed to her. *Id.*

Similarly in *Adams*, in appealing the plan administrator's decision to deny him disability benefits, Adams sent the administrator a letter asserting that the pain medication necessary for him to maintain a minimal amount of functioning was in itself limiting and prevented him from performing his job. *Adams*, 280 F.Supp.2d at 738. Additionally, Adams' personal physician sent a letter to the administrator describing Adams' multiple medications and their effects and concluded by stating that "I think it just sort of absurd for you people to say that he can work taking those medications." *Id.* The physicians reviewing Adams file, like the physician reviewing Smith's file, did not discuss the effects of Adams medications in their reports other than to simply list them. *Id.* at 741.

In the case before this court, Hodges listed the taking of medications on her initial claim form as one of the reasons for her inability to work. Dr. Oxnard, one of Hodges' treating physicians, also initially listed "taking a lot of medications" as one of Hodges' work restrictions. Unlike the treating physicians in *Smith* and *Adams*, however, Dr. Oxnard never actually identified any restrictions imposed by her medications and never certified her as disabled because of her medications. Indeed, AHL's first reviewing physician, Dr. Kleinman, indicated in his report that Dr. Oxnard stated that Hodges' could return to work with only the restriction of limited hours. Dr. Williams, another of Hodges' treating physicians, never mentioned Hodges' medications with respect to work restrictions in any of his statements. Moreover, Hodges' own treating physicians did no more than simply list her medications in the multiple letters sent to AHL on Hodges' behalf.

In Dr. Oxnard's most recent letter to AHL, she specifically listed Hodges' work restrictions as "no bending, no sitting or standing for long periods of time, and no repetitive movements." Conspicuously absent from this list of restrictions is any reference to Hodges' medications. In fact, the only individual to identify any restrictions stemming from Hodges' medications was Hodges' insurance agent who stated that "with the medications required by her physicians there is a realistic chance of making errors" in certain aspects of her job. As noted by AHL, however, Hodges has presented no evidence to show that her insurance agent was qualified to make this statement – her insurance agent is not a medical professional, had no first-hand knowledge of her medical limitations, and did not supervise her work at Wilson Brothers. Absent more convincing evidence in the record that Hodges' medications restricted her ability to perform her job or rendered her disabled, the court cannot conclude that AHL's decision to deny Hodges disability benefits was arbitrary and capricious on the basis that AHL did not consider the effects of those medications.

**B. Reviewing Physicians' Opinions**

Hodges also argues that AHL improperly relied on the opinions of their reviewing physicians concerning her subjective complaints because the reviewing physicians did not conduct independent examinations of Hodges. The lack of a physical exam is "just one more factor to consider in our overall assessment" of the decision to deny a claim for benefits that "may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). Although a reviewing physician is not required to perform a physical examination, a reviewing physician may not make credibility determinations concerning a claimant's subjective complaints without the benefit of a physical examination. *Smith*, 450 F.3d at 263; *Platt v. Walgreen Income Protection Plan for Store Managers*, 455 F.Supp.2d 734, 745 (M.D.Tenn. 2006). In Hodges' case, all four reviewing physicians concluded that there was insufficient objective data to

conclude that Hodges' was unable to perform the material and substantial duties of her job. While each of the these reviewing physicians noted that Hodges had subjective complaints, none of these physicians made a credibility determination with respect to those complaints. Moreover, Dr. Friedman, specifically noted that "the determination of impairment with fibromyalgia problematic because of the subjective nature of symptoms" and suggested that a functional capacity evaluation be performed to determine the reliability of Hodges' subjective complaints. AHL requested the functional capacity evaluation in order to evaluate Hodges' complaints and her ability to perform work related tasks.

Again, the factual circumstances presented in the cases relied upon by Hodges in support of her argument differ from those in her own case. In *Smith*, the court noted that the plan administrator specifically reserved the right to obtain such an independent examination of Smith and failed to do so. *Smith*, 450 F.3d at 263. The court found that the reviewing physicians credibility determinations with respect to Smith's subjective complaints in combination with the fact that the administrator did not obtain an independent examination supported a finding that the administrator's decision to deny Smith disability benefits was arbitrary and capricious. *Id.* at 263-64.

Similarly, in *Platt* the plan administrator was unpersuaded by the description of Platt's limitations provided by Platt's treating physician and instead relied on the opinion of three reviewing physicians, of whom all determined that no objective data supported a finding that Platt was disabled. *Platt*, 455 F.Supp.2d at 745. The reviewing physicians noted the presence of subjective complaints, but the administrator did not conduct an independent examination. The court noted that the administrator had the ability to conduct such an examination, which could have included a functional capacity evaluation, and that the administrator's own consulting physician had suggested a functional capacity evaluation. The court found the administrator's failure to ask Platt to participate in either an independent medical

examination or a functional capacity evaluation supported the conclusion that the administrator's decision to deny Platt disability benefits was arbitrary and capricious.

Unlike the administrator's in *Smith* and *Platt*, AHL ordered Hodges to undergo a functional capacity evaluation. Even assuming that the four physicians that reviewed Hodges' file made credibility determinations with respect to Hodges' subjective complaints in their reports, AHL did not solely rely upon those reports in determining that Hodges was able to perform the material and substantial duties of her job. In addition to the reports, AHL relied upon the results of the functional capacity evaluation in determining that Hodges could perform sedentary work and relied upon the occupational analysis and detailed labor market survey in concluding that Hodges' position was sedentary.[3] Accordingly, the court cannot conclude that AHL's reliance on the reviewing physicians' opinions renders AHL's decision to deny Hodges disability benefits arbitrary and capricious.

**C. Hodges' Restrictions**

In arguing that AHL failed to consider all of the restrictions placed on Hodges by her treating physicians, Hodges specifically contends that both Dr. Oxnard and Dr. Williams restricted her from performing repetitive movements. While this is confirmed by the record, the record also shows that Dr. Friedman stated in his report that neither Dr. Williams nor Dr. Neustadt could make a determination of limitations or restrictions based on Hodges' diagnosis. In any event, even assuming Hodges was restricted from performing repetitive motions, Hodges' job description shows that her duties include a variety of different tasks including interacting with customers, selling, copying, filing, paperwork,

---

[3] Hodges takes issue with AHL's second occupational analysis. Hodges contends that AHL was simply attempting to refute the analysis performed by Violetta, which determined that Hodges' position was "light duty" as opposed to "sedentary." The court disagrees with Hodges' contentions. Dr. Fraser explicitly disagreed with Violetta's conclusion, stating in his report that "the job is not light duty in nature but rather sedentary." The court finds AHL's decision to obtain an additional occupational analysis wholly rational given this conflicting information. Moreover, AHL did not rely solely upon Galarraga's occupational analysis but ordered a detailed labor market survey to further understand the true nature of Hodges' position.

writing, and computer data entry. Additionally, the labor market survey confirmed that positions such as Hodges' allow for one to adjust one's position and take breaks as needed. *See Osborne v. Hartford Life and Accident Ins. Co.,* 465 F.3d 296, 299 (6th Cir. 2006) (finding that occupational duties can properly be determined using objective sources such as the Department of Labor's Dictionary of Occupational Titles). Accordingly, even if Hodges was unable to perform repetitive motions, she has not established that her job requires such.

## IV. CONCLUSION

The record indicates that AHL reviewed Hodges' claim in a multi-step process that included four independent peer physician reviews, occupational analyses by two independent vocational consultants, a functional capacity evaluation, and a labor market survey tailored to Hodges' position and the geographic area in which she resides. The court finds AHL has offered a reasoned explanation for denying Hodges disability benefits. *See Williams*, 227 F.3d at 712. Although Hodges' treating physicians do not agree with the opinions of the reviewing physicians and AHL's conclusion that Hodges is not disabled under the terms of the Plan, AHL is not required to give special deference to the opinions of her treating physicians. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). The court cannot conclude based on the record before it that AHL's decision to deny Hodges disability benefits was arbitrary and capricious. A separate opinion will be entered herein this date in accordance with this opinion.